Good morning, Your Honor. It's Matt Larson for Mr. Wafer. Your Honors, there was no procedural default of Mr. Wafer's Feretta claim. In denying that claim, the California Supreme Court decided Waltrius. And as the District Judge here recognized, it's well established that a Waltrius citation is not a finding of procedural default and does not operate as a procedural bar for federal purposes. This Court, in fact, decided this very question more than 30 years ago in the Maxwell case, where the facts were materially identical to those here. There, as here, the petitioner raised a Feretta claim on direct review in the Court of Appeal. He did not raise it to the California Supreme Court. And he then raised it in a habeas petition to the Supreme Court. This Court held in Maxwell that there was no procedural default because the Court, in citing Waltrius, didn't indicate that there was a default. It indicated merely that the issue had already been decided on direct appeal, and the Court elected not to revisit the issue in habeas. Maxwell controls, Your Honors. And moreover, the issue here was fairly presented to the California Supreme Court. It's also well established in California law that although under Waltrius one should generally present issues on direct appeal, there is a well-established exception to the Waltrius rule for claims of structural constitutional error. And as set out in our briefing and in our supplemental letter brief, Your Honors, a Feretta claim is exactly that. As recognized by the California High Court, as recognized by the U.S. Supreme Court. Well, assume that argument is made in your brief. Why don't you assume that we were to reach it. How does your claim on the Feretta claim survive under ADPA review? Certainly, Your Honor. You've got two Feretta, but in other words, one was the initial one and then the one at the trial. Certainly. Focusing on the initial one in June of 1999, I'll focus on that one today, Your Honors. Adams is the case that controls here. Now Adams, as the State points out, was a pre-ADPA case. However, as the State doesn't dispute, the law is clear that a finding that a Feretta invocation is equivocal or unequivocal is treated as a finding of fact. And the law is clear that even before ADPA, findings of fact were presumed correct. So when ADPA came along, the deference given to findings of fact is perhaps slightly greater. But there's no indication in the Adams case that the decision there was a close call. The question in Adams was whether one can make a conditional yet still unequivocal request to represent oneself. And this court answered that question, yes. One can say, I want to represent myself if you're unwilling to replace my appointed counsel. In Adams, as here, the defendant was saddled with a lawyer he had no faith in. He felt the lawyer was doing nothing. He didn't want to be represented by that lawyer. The court refused to appoint new counsel, and so he said, all right, if you're unwilling to appoint new counsel, then I want to represent myself. This court held that is an unequivocal invocation of the Feretta right. And when that unequivocal request is made, the court is under a duty to engage in the Feretta colloquy, which, as is undisputed, did not happen here. Here, instead of warning Mr. Wafer of the possible penalties, of the nature of the charges and the various perils of self-representation, the judge instead simply tried to dissuade him. He told Mr. Wafer, no, your lawyer, he's a good lawyer. I implore you to get along. Try again. He'll try again. Mr. Kuberer, he's a nice guy. He'll do a good job for you. He apologized. Give him a break. We'll get through this. This is not what a judge. Scalia, what page of the record are you looking at? That's between 70 and 75 of the excerpts of record, Your Honor. Okay. But the passage you just read, I'm just trying to see what page is that on. Oh, I'm sorry. I read various passages, and they run between 70 and 75. Between 70 and 75. All right. Very well. Yes, Your Honor. So here, Mr. Wafer made a conditional and permissibly conditional request to represent himself. He said, the lawyer has been representing me all this time. I feel he's not doing anything. But what do you do when he says, I want someone who's going to advocate the situation the way it's supposed to be done? In other words, I want another lawyer. Exactly. And he's not that guy. And let me get right to the heart of the matter here. There's that one line where the judge says, do you really want to go pro per? And he says, I don't want to go pro per. I want someone who's able to handle my case, to give me professional advice. We expect certain things from Mr. Kuberer, but we haven't gotten that. That's exactly what happened in Adams. On page 1442 of the Adams decision, the Court quotes Mr. Adams as saying to the judge there, just as I have said before, I have never wanted to be pro per, but Mr. Carroll, my lawyer, won't do anything. Most people, Your Honors, don't want to represent themselves at a trial, certainly at a murder trial. They want a lawyer who they have faith in, who they feel is competent. When that relationship breaks down and they have no faith in their lawyer and the judge is planning to replace the lawyer, then the individual has the right under Feretta to say, I'm going to go it alone. It may not be the best choice, but it's the individual's absolute choice to make. And when, as here, a clear invocation of the right is made, the Court has to engage in the Feretta colloquy, which never happened. Here, the colloquy didn't happen, and the request was simply denied. Adams is not a Supreme Court case. It's pre-EDPA. It's a decision of this Court making a judgment about findings of fact. So how can a judgment about findings of fact in another case bind us in this case? Because the question there, Your Honor, is the same question here. Was the invocation equivocal or not? Well, but there are – there may be differences in the way that people express things. That's why we have a trial judge on site to make those kinds of judgments. We don't see body language. We don't hear voice inflections. All we're looking at are plain words. So we have a trial judge who has made the judgment here that he didn't really want to go pro per, and has tried to salvage the situation because he's not really willing to just let him burn through counsel, which we see many, many, many times. The same judgment was made in Adams, Your Honor. This person, he's expressing – he says it on the record, Adams, I don't want to go pro per. And Mr. Wafer says, no, if given the choice between a lawyer who's trained in the Do we have to have a – do we have to have a Supreme Court judgment on that in order to issue a ruling here now? We have – well, we have – obviously, we have Feretta. And obviously, Adams was interpreting Feretta. And Feretta says very little about whether a request is equivocal. Right. But if it's not clear on the – if it's not clear from the Supreme Court's authority, then how are we to judge that the court here is wrong? Well, this Court certainly is bound by its own precedent in Adams. And in Adams, this Court said that a conditional request exactly like the one here, saying I have no faith in this guy – Right. But that's unequivocal. But the California trial court is not bound by Adams. It's bound by Feretta. And if Feretta isn't clear on that point, then how do we say that it's violated clearly established Supreme Court authority? The question here, Your Honor, is whether one can look at this particular record and reasonably say that the request was equivocal. And on this record, the answer is no. And I'll direct Your Honors now to the specific parts of the record where this is clear. On page 70 of the excerpts, Mr. Wafer says, I don't want him, sir, and I refuse to proceed any further with him. He then says on page 71, I would like to invoke my Feretta rights. I want to go pro per. The judge then starts to try to dissuade him, and it follows on to page 73. And the claim that – Right. But page 71 is where he says, I don't want to go pro per. And he explains the reason, just as Mr. Adams explained, that the reason he didn't want to do this is because, as any sane person would in a murder trial, who's not a lawyer, he doesn't want to represent himself. So you're basically saying the California Court of Appeal effectively foreclosed from reading this transcript in its entirety, where he acquiesces at the end and after the judge – no, wait a minute. Let me finish my question. Okay? And at the end, he says, all right, I trust you, Judge, that this attorney will do a good job for me. And so you're saying that on that entirety of the transcript, the California Court of Appeal was bound to find, as a matter of fact, that it was unequivocally invoked and that none of the dialogue made any difference. Once he said, I want to go pro per, that was it. And that is the equivalent of the battles we have had in the Miranda case. When do you clearly invoke Miranda? And there have been a lot of debate in various cases, including in this court, debating whether or not the Supreme Court standard is absolutely clear and clearly invoked. And that has been shaded, as we know, in various cases according to the actual testimony, the actual colloquy that went on. So now we come back to this. And what I hear your argument is he said, I want to go pro per, and anything the judge did to banter back or dissuade him is for naught. No, Your Honor, that's not my position. Okay. And I respectfully disagree with your characterization of the colloquy ending at the I trust you, excuse me, the back and forth ending at I trust you. It ended on page 73. On 70 and 71, he first says, I want to go pro per, I want to invoke Feretta. And the judge then starts to say, well, you know, try essentially to dissuade him. And there's a back and forth. I'm looking at the same page. Yes, leading to page 73, where the judge says. What line? Line 13, Your Honor. The judge says, try it again, and he'll try it again. And Mr. Wafer says, no disrespect, sir, but I refuse to go any further with this gentleman. And the judge then says, well, you're going to go with him. That's the ruling. And then he says, I would like to invoke my Feretta rights and go pro per. Precisely. And then he says, we're right back to what I said again. You are not really wanting to represent yourself. You want him off, and that's not a good ground to represent yourself. There are two separate rights. And then he goes on and says, page 75, as far as your Feretta issue, I'm going to make a finding that it's really a conditional request that you tried to invoke. But I'm going to ask you, I'm going to monitor this case. Defendant, please. If he doesn't do a good job, I'll kick him off. Defendant, and so on and so forth. Yeah, you're right. If you really sit down and go through all this, and the defendant concludes by saying, all right, sir, I trust you. So you're saying you want it to all end before that. On this record, Your Honor, it ended when the judge says, well, you're going to go with him. Okay. When the judge makes clear. And then this person. I got your position. Yes, that's our position. And then he says, well. Thank you, counsel. Your time for your side has expired. Thank you. We'll hear from the State. Good morning. May it please the Court. David Wilden, Deputy Attorney General for the Respondent of the Warden-Hedgepeth. All of Petitioner's claims, the Feretta claims and other claims are procedurally barred. The Feretta claim is barred by the Waltrius Doctrine, and the other claims are barred by Clark Timeliness. The Waltrius Doctrine of procedural bar still applies in this case. We have two Waltrius situations. We have the Hill v. Roe situation, where a claim was exhausted on direct appeal and a petition for review, and then there's later a Waltrius bar. Obviously, the Waltrius bar doesn't bar entrance into Federal court on that claim because it's already been fully exhausted on direct appeal. That's not the situation. What we have here is the Forrest v. Vasquez situation, where Petitioner raised a claim in the California Court of Appeal. It was decided adversely to him, yet no petition for review was filed. He didn't file California Rules of Procedure, which require that all claims that are brought on the four corners of the appellate record be raised on direct appeal rather than habeas corpus. So that Waltrius bar, although in most situations doesn't apply, here it does. And in this instance, Petitioner did not fairly present his Feretta claim to the California Supreme Court on direct appeal as the California rules required him to, and it is barred for that reason. If I could briefly address the Maxwell v. Summers case, which counsel brought up, Maxwell v. Summers is an old case from the 1980s. It has not been good law for 30 years. It goes back to a time when it was assumed by California rules that all issues raised in the California Court of Appeal were automatically included in the petition for review. On March 6, 1985, the California rules of court were changed, and from that date forward, 30 years ago, a claim has to be brought in the petition for review to be raised before the California Supreme Court on review. So Maxwell v. Summers is no longer good law. And Petitioner has not shown cause and prejudice, but even if he had, looking at the Feretta claim, which was not raised and exhausted in the California Supreme Court, the California Court of Appeal reasonably applied Supreme Court authority. It reasonably applied Feretta, which is the key Supreme Court case on this. Roberts. Counsel, what's your response on the Adams case that your opposing counsel cited? Adams v. Carroll. First of all, it's pre-ADPA. This Court in Stenson v. Lambert and in another case has said that it's no longer controlling authority because it's pre-ADPA, and the Supreme Court authority which controls is Feretta. Feretta has some wide principles having to do with equivocality. And even if Adams was controlling, it's very different than this case. Adams is a case where the Petitioner originally represented himself in the trial court for about six weeks. It's a case where the Petitioner had a malpractice claim already filed against his attorney. And it's a case where there were four hearings in a period of six weeks. Each hearing, the Petitioner in that case unequivocally said, I want a different attorney. And if I don't get a different attorney, then I want to represent himself. He was absolutely crystal clear. And that's what the court in Adams v. Carroll says. This case is very different. We don't have four hearings in six weeks where the Petitioner said the same thing over and over again. Instead, we have the June hearing where Petitioner equivocates and goes back and forth. He says, I want a different counsel. They discussed it for 10 or 11 pages of the record where the counsel was doing a good job. And then when the court says, I'm not going to remove counsel, there hasn't been cause shown, he says, I want to go pro par. And then they proceed to discuss that further. And he acquiesces, the Petitioner does, and doesn't insist that he go pro par. He doesn't say, Your Honor, I insist, if I can't have a different attorney, I want to go pro par. If you don't grant me that right, I'm going to file a writ and bring it up to the California Court of Appeal. He doesn't insist on that. Well, that's a little bit of a lawyer argument for this lay person to know he has to be that insistent about going and getting a writ. Yes, Your Honor. But he is trying to become his own lawyer, allegedly. And those are the steps he does need to take. On the spur of the moment, perhaps, yes. Anything further, counsel? We don't see that he raises this Feretta claim again in July, August, September, until October on the very day of trial. The jury is waiting to come into the courtroom. All the witnesses are there. They're ready to begin trial. And for the next first time in months, he says, Now I want to raise Feretta again. Well, actually, what it is, is his counsel comes into the courtroom and tells the judge, I want to have a Marsden. Petitioner wants to have a Marsden hearing. He wants a different attorney. And then the court hears from counsel, who equivocates again and says, I want to represent myself. I want Feretta. And, again, we have the same type of thing where the trial court tells the petitioner that he's sort of equivocating. He's going back and forth on two different rights. Which is it that you want? What do you want? And in the end, he agrees to go forward with counsel. And I think it's an important point. It is the day of trial. The trial court does indicate he will let Petitioner represent himself at trial, but he has to be ready to go forward that day. It is the day of trial. Roberts. I think we understand that argument. Anything further? Your Honor, I would also argue, as set forth in the brief, that the other claims are barred by Clark. Right. And we do have a recent Supreme Court decision, Walker v. Martin, which upholds the Clark bar for timeliness. Thank you. Thank you, counsel. The case just argued will be submitted for decision. And has Mr. de la Madrid arrived? No. Well, we understand. We will next hear argument in Chagill v. Lynch.
judges: O'scannlain, Fisher, Bybee